IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| D. KEITH HEFLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:10cv00566-RGD-TEM |
| | § | |
| COLEMAN MUSIC AND | § | Judge:  Robert G. Doumar |
| ENTERTAINMENT, L.L.C., *et al.,* | § | |
| | § | Magistrate:  Tommy E. Miller |
| Defendants. | § | |
| | § | JURY TRIAL DEMANDED |
| --------------------------------------------------------- | § | |

## **DEFENDANTS GARY COLEMAN AND COLEMAN MUSIC AND ENTERTAINMENT, L.L.C. 'S FIRST AMENDED ANSWER TO SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIM**

Defendants Coleman Music and Entertainment, L.L.C. ("Coleman Music") and Gary Coleman ("Coleman") (collectively, the "Coleman Defendants") hereby file their First Amended Answer to the Second Amended Complaint and Amended Counterclaim and answer the Second Amended Complaint of Plaintiff D. Keith Heflin ("Plaintiff") as follows:

### **THE PARTIES**

1. The Coleman Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

### **JURISDICTION AND VENUE**

6. The Coleman Defendants admit that the Second Amended Complaint is a

1

purported action for patent infringement and that this Court has subject matter jurisdiction over the claims.  Except as thus admitted, the remaining allegations of Paragraph 6 are denied.

7.     The Coleman Defendants admit that Coleman Music installed certain machines in a retail store called "Holiday Food Stores" in Suffolk, Virginia, pursuant to a lease agreement with Supreme.  Except as thus admitted, the allegations of Paragraph 7 are denied.

8.     The Coleman Defendants admit that Coleman Music installed certain machines at a Slip-In retail location in Franklin, Virginia, pursuant to a lease agreement with Slip-In. Except as thus admitted, the allegations of Paragraph 8 are denied.

9.     Admitted as to Coleman Music and denied as to Coleman.

## COUNT I – PATENT INFRINGEMENT

10.     The Coleman Defendants incorporate by reference their responses to Paragraphs 1 through 9 as if fully set forth herein.

11.     The Coleman Defendants admit that a copy of U.S. Patent No. 6,213,874 (the "'874 Patent") is attached as Exhibit 1 to the Second Amended Complaint.  The Coleman Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11, which allegations they accordingly deny.

12.     The Coleman Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 and accordingly deny the same.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18. Denied.

19. Denied.

20. The Coleman Defendants admit that Coleman is the president of Coleman Music. Except as thus admitted, the allegations of Paragraph 20 are denied.

21. Denied.

22. Denied.

23. The Coleman Defendants admit that Supreme learned of the existence of the '874 Patent on or about November 17, 2010, and that Supreme has not discontinued its use of the machines that Coleman Music installed on its premises. Except as thus admitted, the allegations of Paragraph 23 are denied.

24. The Coleman Defendants are without knowledge or information sufficient to form a belief as to when Slip-In had knowledge of the '874 Patent. Except as thus responded to, the allegations of Paragraph 24 are denied.

25. The Coleman Defendants deny each and every allegation, prayer, matter, fact or thing alleged in the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

The Coleman Defendants' Affirmative Defenses are listed below. The Coleman Defendants reserve the right to amend their Answer to add additional Affirmative Defenses, including allegations of instances of inequitable conduct, consistent with the facts discovered in the case.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The Coleman Defendants have not infringed or induced or contributed to any infringement by others of any claims of the '874 Patent.

## THIRD DEFENSE

The claims of the '874 Patent are invalid for failure to meet one or more of the conditions specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and/or 132.

## FOURTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, by the doctrine of prosecution history estoppel.

## FIFTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, because Plaintiff granted a license to the Coleman Defendants to distribute, use and sell certain machines apparently accused of infringement.

### SIXTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, because Plaintiff acquiesced in the conduct by the Coleman Defendants that allegedly infringes the '874 Patent.

### SEVENTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, by the doctrine of waiver.

### EIGHTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, by the doctrine of estoppel.

### NINTH DEFENSE

Plaintiff's claim for relief is barred, in whole or in part, by the doctrine of accord and satisfaction.

### TENTH DEFENSE

To the extent that Plaintiff and its licensees failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or otherwise give proper notice that the actions of the Coleman Defendants allegedly infringed the '874 Patent, the Coleman Defendants are not liable to Plaintiff for the acts alleged to have been performed before the Coleman Defendants received actual notice that they were allegedly infringing the '874 Patent.

### ELEVENTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### TWELFTH DEFENSE

Plaintiff's claims are barred by the doctrine of patent misuse.

**THIRTEENTH  DEFENSE**

Plaintiff is not entitled to injunctive relief because any injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy (if any) at law.

**AMENDED COUNTERCLAIM**

Comes now Counterclaimants Coleman Music and Entertainment, Inc. ("Coleman Music") and Gary Coleman, and for their Amended Counterclaim against Plaintiff D. Keith Heflin ("Heflin"), show the Court as follows:

**THE PARTIES**

1.      Counterclaimant Coleman Music and Entertainment, Inc. ("Coleman Music") is a Florida corporation with a principal place of business at 1015 Haines Street, Jacksonville, Florida  32206.

2.      Counterclaimant Gary Coleman is an individual who resides at 249 Roscoe Blvd., North, Ponte Vedra Beach, Florida  32082.

3.      Gary Coleman is the sole managing member of Coleman Music.

4.      Upon information and belief based solely on Paragraph 1 of the Complaint as pled by Heflin, Heflin is an individual who resides at 439 Naron Drive, Shelbyville, Tennessee 37160.

**JURISDICTION AND VENUE**

5.      This counterclaim arises under the patent laws of the United States, Title 35, United States Code, the unfair competition laws of the United States, Title 15, United States Code, and the state and common laws of the State of Virginia.  The jurisdiction of this Court is proper under at least 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

6.      Heflin has subjected himself to jurisdiction before this Court by filing this action.

7.      Venue may be made in this District pursuant to at least 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

**A.      The Prosecution of the '874 Patent**

8.      On September 9, 1997, Heflin filed an application for a patent on a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature" (the "Heflin Application").

9.      In the Abstract for the Heflin Application, Heflin described his claimed invention as follows:

> A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer.  As a promotion to encourage the sale of the collector's cards, the system includes a game sub-system that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased.  The purchaser may then save such credits or play them, and to the extent that a person wins, a promotional prize will be awarded.

A true and correct copy of the Abstract is attached as Exhibit A.

10.     On June 14, 1999, the Patent and Trademark Office issued an Office Action rejecting the claims set forth in the Heflin Application.  A true and correct copy of the Office Action is attached as Exhibit B.

11.     In the Office Action, the examiner found that the claimed invention was obvious under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 5,674,128 to Holch ("Holch Patent") in view of U.S. Patent No. 5,868,236 to Rademacher ("Rademacher Patent").  True and correct copies of the Holch Patent and the Rademacher Patent are attached, respectively, as Exhibits C and D.

12.     In particular, the examiner found that the Holch Patent disclosed all elements of the claimed invention except for "a dispensing mechanism which dispenses the collector card." Exhibit B, at 2-3.

13.     However, the examiner also found that Rademacher teaches "a dispenser that dispenses collector cards" by dispensing a phone card and a separate paper receipt with a personal identification number (PIN) to access the account on the phone card.   Exhibit B, at 3.

14.     Based on such finding, the examiner concluded that it would be obvious to combine the inventions of the Holch Patent and the Rademacher Patent "to have a game vending station that produced collector cards with monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game that is attached to the processor of the game system and playable immediately after payment has been received." Exhibit B, at 3.

15.     Heflin filed a Response to the Office Action on January 24, 2000, and a true and correct copy of the Response is attached as Exhibit E.

16.     In his Response, Heflin argued that the cards and receipt with PIN number dispensed by the invention in the Rademacher Patent were not "collector cards" as required by his invention:

> Rademacher describes a PIN vending dispenser for selling telephone calling cards.  In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value cards.  See Col. 2-3.  This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention.  This directly teaches away from the value of the collector cards of the present invention.  In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some associated value accessed by PIN number that happens to be printed on the card for convenience.  Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their inherent value as taught by the present invention.

Exhibit E, at 3.

17.     The examiner was persuaded by Heflin's arguments that dispensing no-value phone cards with a separate paper receipt with a PIN number was not dispensing "collector cards," and issued a Notice of Allowance on April 7, 2000.  A true and correct copy of the Notice of Allowance is attached as Exhibit F.

18.     In the Notice of Allowance, the Examiner stated that the reasons for allowance were that "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards."  Exhibit F, at 2.

19.     U.S. Patent No. 6,213,874 ("'874 Patent") issued to Heflin on April 10, 2001.  A true and correct copy of the '874 Patent is attached as Exhibit G.

20.     Based upon the arguments that Heflin made to the Patent and Trademark Office that dispensing "a no-value phone card with some associated value accessed by PIN number that happens to be printed on the card for convenience," Heflin has had actual knowledge since the '874 Patent issued that the claims of his Patent do not cover a machine that offers an opportunity to play an instant win game, but which machine dispenses no-value phone cards or receipts with some associated value accessed by PIN number.

**B.    Heflin and Worlds of Games, Inc.**

21.     Upon information and belief, Heflin is the president and majority shareholder of Worlds of Games, LLC ("WOG"), a limited liability company organized and existing under Tennessee law with a principal place of business in Shelbyville, Tennessee.

22.     Upon information and belief, Heflin is the central figure in WOG and personally directs, authorizes and controls all actions of WOG.

23.     Upon information and belief, Heflin directs the activities of WOG and has personally participated in and caused WOG to engage in the acts complained of herein.

24.     Upon further information and belief, Heflin has gained a financial benefit from his participation in the acts complained of herein.

25.     Upon information and belief, Heflin has licensed the rights to manufacture, distribute, use and/or sell the subject matter claimed in the '874 Patent to WOG.

26.     Upon information and belief, WOG has entered into license and distribution agreements with certain entities in Virginia and in other states to distribute game machines that dispense phone cards and which machines are allegedly covered by the '874 Patent ("WOG Game Machines").

27.     The WOG Game Machines are marketed and distributed under the name "FREESPIN."

28.     The phone cards dispensed by the WOG Game Machines are no-value phone cards with some associated value accessed by PIN number.

29.     The WOG Game Machines do not dispense collector cards.

**C.     The Relationship Between WOG and the Coleman Defendants**

30.     Prior to 2008, Gary Coleman was an officer, employee and shareholder of the Florida entity C&R Games, Inc.  ("C&R Games").

31.     While Gary Coleman was an employee of C&R Games, C&R Games was in the business of providing gaming machines in truck stops and convenience stores and similar locations.

32.     As part of its business, C&R Games entered into agreements with WOG to purchase WOG Game Machines and distribute those games in certain geographic areas.

10

33.     C&R Games entered into lease agreements with certain entities in Virginia and Florida and installed and serviced WOG Game Machines in spaces that were leased in truck stops and convenience stores owned by the entities who were parties to the lease agreements.

34.     On August 24, 2007, Gary Coleman entered into an agreement with WOG to purchase WOG Game Machines and distribute such Machines in Duval County, in Florida.

35.     In 2007, Gary Coleman and C&R Games began negotiating the termination of their relationship, and he resigned as an officer of C&R Games in October 2007.  Gary Coleman and C&R Games entered into a termination agreement on January 4, 2008.

36.     In December 2007, the business of C&R Games was divided.

37.     Highway Games, LLC ("Highway Games") was formed by Gary Coleman's father, Gary Coleman, Sr.

38.     Coleman Music was formed by Gary Coleman.

39.     As a result of the splitting of the C&R Games business, the agreement between Gary Coleman and WOG expired on December 30, 2007.

40.     Highway Games entered into an agreement with WOG to purchase the WOG Game Machines from WOG and distribute such Machines in certain geographic areas in Virginia.

41.     Highway Games entered into lease agreements with various entities in Virginia to lease space in truck stop and convenience store locations and install and service game machines in such locations.  From 2007 through November 2010, Highway Games installed and serviced the WOG Game Machines in such leased spaces.

42.     After the expiration of the distribution agreement between Gary Coleman and WOG in December 2007, WOG requested that Coleman Music sign a new distribution

agreement with WOG.  Coleman Music and Gary Coleman refused to sign any agreement with WOG.

43.     Since January 1, 2008, there has not been any written agreement in effect between Gary Coleman and WOG to distribute WOG Game Machines.

44.     There has never been any written agreement in effect between Coleman Music and WOG to distribute WOG Game Machines.

45.     During 2008, 2009, and 2010, Coleman Music purchased WOG Game Machines, phone cards, and machine parts from WOG and installed those machines in various locations in Florida, including locations in Duval County, St. John's County, Clay County, Flagler County, Bradford County, Sumnter County, Volusia County, Indian River County, Nassau County, Madison County, and Marion County.

46.     During 2008, 2009, and 2010, Coleman Music sent commission reports to WOG setting forth revenues from each of the locations in which it was operating WOG Game Machines, and WOG accepted commission payments based on Coleman Music's operation of WOG Game Machines in those locations without objection.

47.     The Coleman Defendants understood that during 2008, 2009, and 2010, they had the right to purchase WOG Game Machines from WOG, and to install and operate such Machines in locations so long as they paid commissions to WOG based on the revenues from the operation of the Machines.

48.     As a result of the established course of conduct between WOG, Heflin, Gary Coleman and Coleman Music, and to the extent that any license to operate the WOG Game Machines is required, Coleman Music has a license from WOG to operate the WOG Game

49.     On September 27, 2010, Heflin sent Coleman Music an email in which Heflin claimed that Coleman Music was operating the WOG Game Machines without a license.

50.     This was the first objection made by Heflin or WOG to the operation of the WOG Game Machines during the entire nearly three year period during which Coleman Music had been operating such Machines without any written agreement between Coleman Music and WOG.

**D.     The Coleman Game Machines**

51.     In May 2008, Coleman Music entered into a lease agreement with TA Operating, LLC ("TA") to lease space in certain TA sites in Florida and install and service game machines in such spaces.

52.     Coleman Music installed WOG Game Machines in such TA sites.

53.     In 2008, Coleman Music discovered another source for gaming machines and began purchasing game machines (the "Coleman Game Machines") from such third party source.

54.     The Coleman Game Machines do not dispense collector cards.

55.     The Coleman Game Machines dispense a paper cash register receipt which contains a phone number and a PIN number.  The paper receipt from the Coleman Game Machines also indicates the amount of telephone time or Internet time authorized by the receipt. A true and correct photograph of a cash receipt that is dispensed by the Coleman Game Machines is attached as Exhibit H.

56.     The paper cash register receipts dispensed by the Coleman Game Machines have no intrinsic value.

57.     Heflin and WOG have actual knowledge that the Coleman Game Machines do not dispense collector cards and that such Machines do not infringe any claims of the '874 Patent.

58.     Coleman Music began removing the WOG Game Machines from the commercial establishments from which Coleman Music had leased space in Florida and began installing the Coleman Game Machines in such spaces.

59.     In late 2008 or early 2009, Coleman Music removed the WOG Game Machines that had been installed in locations leased from TA from such locations and replaced them with the Coleman Game Machines.

60.     Heflin and WOG had actual knowledge that TA was a customer of Coleman Music.

61.     Heflin and WOG had actual knowledge that Coleman Music had replaced the WOG Game Machines with Coleman Game Machines in spaces leased at TA establishments.

62.      In October 2009, Heflin and WOG had their counsel send a letter to TA raising alleged "concerns" that the Coleman Game Machines infringed the '874 Patent.  A true and correct copy of such letter is attached as Exhibit I.

63.     After sending the letter, Heflin and WOG subsequently made telephone calls and send emails to TA and other customers of Coleman Music in which Heflin and WOG falsely stated that the Coleman Game Machines infringe the '874 Patent and threatened to sue TA and other customers of Coleman Music.

64.     As a result of the false and threatening statements by Heflin and WOG in telephone calls and emails to TA, TA canceled its contract with Coleman Music in January 2010.

65.     In November 2010, Coleman Music purchased certain assets from Highway Games, including Highway Games' rights under its leasing agreements with commercial

establishments in Virginia to install and service gaming machines in the spaces leased from such commercial establishments.

66.     In November 2010, Coleman Music met with Frank's Trucking Center, Inc. in Norfolk, Virginia, and All American Plazas, Inc. in Doswell, Virginia, to attempt to persuade them to sign lease agreements with Coleman Music to install and service Coleman Game Machines in such spaces.

67.     Heflin and WOG had actual knowledge that Coleman Music was soliciting business from Frank's Trucking Center, Inc. and All American Plazas, Inc. in November 2010.

68.     In November and December 2010, Heflin and WOG sent letters and/or emails and made telephone calls to Frank's Trucking Center, Inc., All American Travel Plaza, Inc., and other potential customers of Coleman Music and falsely stated that the Coleman Game Machines infringe the '874 Patent and threatened to file suit against such customers if they allowed Coleman Game Machines to be installed in their stores.

69.     Frank's Trucking Center, Inc., All American Travel Plaza, Inc. and other potential customers of Coleman Music decided not to do business with Coleman Music after receiving the false statements about Coleman Game Machines from Heflin and WOG.

70.     Heflin and WOG made such false statements about Coleman Game Machines to customers and potential customers of Coleman Music in bad faith with malicious intent to harm Coleman Music.

71.     On November 19, 2010, Heflin and WOG issued a press release ("Press Release") in which Heflin and WOG stated that Coleman Music and Gary Coleman were distributing machines "that were covered by his 874 Patent" and that "my intellectual property is being

knowingly and unfairly exploited."  A true and correct copy of the Press Release is attached as Exhibit J.

72.     Heflin   and   WOG   published   the   Press   Release   on   the   website www.worldofgamesllc.com.  True and correct copies of print-outs from the website showing the Press Release are attached as Exhibit K.

73.     The statements contained in the Press Release that Coleman Game Machines are covered by the '874 Patent and that Mr. Heflin's intellectual property "is being knowingly and unfairly exploited" by Coleman Music and Gary Coleman are false.

74.     Heflin  and  WOG  issued  and  published  the  Press  Release  containing  false statements about the Coleman Game Machines, Coleman Music and Gary Coleman with actual knowledge that such statements were false.

75.     Heflin  and  WOG  issued  and  published  the  Press  Release  containing  false statements about the Coleman Game Machines, Coleman Music and Gary Coleman in bad faith with malicious intent to harm Coleman Music and Gary Coleman.

76.      The false statements that the Coleman Game Machines infringe the '874 Patent that Heflin and WOG made to customers and potential customers of Coleman Music through letters, emails and telephone calls and in the Press Release are objectively baseless.

77.     Coleman Music has suffered actual harm as a result of Heflin and WOG's false statements to the customers and potential customers of Coleman Music and as a result of the false statements made in the press release.

## COUNT ONE

## COLEMAN MUSIC'S TORTIOUS INTERFERENCE CLAIM

78.     Coleman Music reasserts and incorporates the allegations of Paragraphs 1 - 77 as if fully set forth herein.

79.     Coleman Music had a valid contractual relationship with TA in 2009 and 2010.

80.     Heflin and WOG had actual knowledge of Coleman Music's contractual relationship with TA in 2009 and 2010.

81.     Coleman Music had a business expectancy with Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers in November and December 2010.

82.      Heflin and WOG had actual knowledge of Coleman Music's business expectancy with Frank's Trucking Center, Inc., All American Plazas, Inc. and other potential customers in November and December 2010.

83.     Heflin and WOG made false statements that the Coleman Game Machines infringe the '874 Patent to TA in telephone calls and emails to TA that occurred in late 2009 and early 2010.

84.     Heflin and WOG made false statements that the Coleman Game Machines infringe the '874 in telephone calls and emails to Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music in November and December 2010.

85.     Heflin and WOG had actual knowledge that their statements made to TA that the Coleman Game Machines infringe the '874 Patent were false.

86.     Heflin and WOG had actual knowledge that their statements made to Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music that the Coleman Game Machines infringe the '874 Patent were false.

87.     Heflin and WOG's statements made to TA that the Coleman Game Machines infringe the '874 Patent were objectively baseless.

88.     Heflin and WOG's statements made to Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music that the Coleman Game Machines infringe the '874 Patent were objectively baseless.

89.     Heflin and WOG made false statements that the Coleman Game Machines infringe the '874 Patent to TA, Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music in bad faith with intent to harm Coleman Music.

90.     Heflin and WOG made such false statements to TA with intent to induce Travel Centers of America, Inc. to terminate its contractual relationship with Coleman Music.

91.     Heflin and WOG made such false statements to Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music with intent to induce such potential customers to refuse to do business with Coleman Music.

92.     After receiving Heflin and WOG's false statements and as a result of receiving such false statements, TA terminated its contractual relationship with Coleman Music in January 2010.

93.     After receiving Heflin and WOG's false statements in November and December 2010 and as a result of receiving such false statements, Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers of Coleman Music refused to do business with Coleman Music.

94.     Coleman Music has suffered substantial damage as a result of the false statements by Heflin and WOG.

18

95.     The aforesaid acts of Heflin and WOG are greatly and irreparably damaging to Coleman Music and will continue to be greatly and irreparably damaging to Coleman Music unless enjoined by this Court, as a result of which Coleman Music is without an adequate remedy at law.

**COUNT TWO**

**COLEMAN MUSIC'S CLAIM FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT**

96.     Coleman Music reasserts and incorporates the allegations of Paragraphs 1 - 95 as if fully set forth herein.

97.     The aforesaid false and misleading statements made by Heflin and WOG, including the false statements made in the Press Release and the false statements made by letters, emails and telephone calls to customers and potential customers of Coleman Music, constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     These false and misleading statements constitute material misrepresentations which were and are likely to influence potential customers of Coleman Music not to do business with Coleman Music.

99.     The false and misleading statements were and are being made in commerce by Heflin and WOG in the context of promoting the WOG Game Machines.

100.    The false and misleading statements have and are creating a likelihood that customers and potential customers of Coleman Music will be deceived and have and are creating a likelihood of injury to Coleman Music.

101.    Upon information and belief, customers and potential customers of Coleman Music were deceived by the false and misleading statements of Heflin and WOG.

102.    The false and misleading statements were made and are being made by Heflin and WOG willfully and in bad faith.

103.    The false and misleading statements are objectively baseless.

104.    The aforesaid acts of Heflin and WOG are greatly and irreparably damaging to Coleman Music, and will continue to be greatly and irreparably damaging to Coleman Music unless enjoined by this Court, as a result of which Coleman Music is without an adequate remedy at law.

**COUNT THREE**

**COLEMAN MUSIC AND GARY COLEMAN'S CLAIM FOR DECLARATORY**

**JUDGMENT OF NON-INFRINGEMENT**

105.    Coleman Music and Gary Coleman reassert and incorporate the allegations of Paragraphs 1 - 77 as if fully set forth herein.

106.     Based on Heflin's filing of this action and the Coleman Defendants' Answer to the Complaint, an actual controversy has arisen and now exists between the parties as to whether the claims of the '874 Patent are infringed by Coleman Music and Gary Coleman.

107.    Coleman Music and Gary Coleman do not infringe any of the claims of the '874 Patent because the Coleman Game Machines that have been accused by Heflin of infringement do not dispense "collector cards."

108.    Coleman Music and Gary Coleman do not infringe any of the claims of the '874 Patent because the WOG Game Machines that have been accused by Heflin of infringement do not dispense "collector cards."

109.    Coleman Music and Gary Coleman do not infringe any of the claims of the '874 Patent because Coleman Music and Gary Coleman were distributing and operating the WOG

Game Machines pursuant to a license from Heflin, and Heflin acquiesced in such distribution and use.

110.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and 35 U.S.C. § 100 *et seq.*, Coleman Music and Gary Coleman request a declaratory judgment by the Court that the claims of the '874 Patent are not infringed by Coleman Music or Gary Coleman and that Coleman Music and Gary Coleman have not induced or contributed to the infringement of any of the claims of the '874 Patent by others.

## DEMAND FOR JURY TRIAL

Counterclaimants Coleman Music and Gary Coleman hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered the allegations of Heflin's Second Amended Complaint, Coleman Music and Gary Coleman respectfully pray for the following relief:

(a)    That the Court declare that the asserted claims of the '874 Patent are not infringed by Coleman Music or Gary Coleman;

(b)    That the Court declare that Coleman Music and Gary Coleman have not induced or contributed to the infringement of any claims of the '874 Patent by anyone;

(c)    That Judgment on Heflin's Second Amended Complaint be rendered for Coleman Music and Gary Coleman and against Heflin;

(d)    That Heflin, his licensees, his companies, including WOG, which is jointly and severally liable to Coleman Music on its counterclaims for tortious interference and unfair competition, distributors, heirs, employees, attorneys, representatives,

agents, and all other persons in active concert or participation with Heflin, and his successors and assigns be permanently enjoined from the following acts:

(1)  making false statements that the Coleman Game Machines infringe any claims of the '874 Patent; and

(2)  tortiously interfering with the relationship between Coleman Music and any of its existing or potential customers in any manner;

(e)  That Coleman Music receive from Heflin all profits earned by Heflin as a result of Heflin's improper conduct;

(f)  That Coleman Music be entitled to recover from Heflin and WOG, jointly and severally, all monetary damages caused by Heflin and WOG's misconduct to which Coleman Music is entitled;

(g)  That Heflin and WOG be required to pay Coleman Music exemplary and punitive damages, including but not limited to three times the actual damages caused by Heflin and WOG's improper conduct;

(h)  That Heflin's Second Amended Complaint by dismissed in its entirety, with prejudice;

(i)  That the Court find this case to be exceptional under 35 U.S.C. § 285 and award Coleman Music and Gary Coleman their reasonable attorneys' fees;

(j)  That the Court find this case to be exceptional under 15 U.S.C. § 1117 and award Coleman Music its reasonable attorneys' fees;

(k)  That the Court award Coleman Music and Gary Coleman their costs of suit; and

(l)  That the Court grant such other and further relief as the Court may deem appropriate.

Respectfully submitted,

_____/s/_____

Counsel for Defendants Gary B. Coleman, Jr. and
Coleman Music and Entertainment, L.L.C. and
Supreme Petroleum, Inc.

J. Gray Lawrence, Jr. (VSB No. 13401)
Faggert & Frieden, P.C.
222 Central Park Avenue, Suite 1300
Virginia Beach, Virginia  23462
757-424-3232 (Telephone) - 757-424-0102 (Fax)
jglawrence@fflaw.com

Dale Lischer (GA Bar No. 45027)
Elizabeth G. Borland (GA Bar No. 460313)
Smith, Gambrell & Russell, LLP
Promenade II, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA  30309-3592
404-815-3500 (Telephone) - 404-815-3509 (Fax)
DLISCHER@sgrlaw.com
EBORLAND@sgrlaw.com

## Certificate of Service

I hereby certify that on February 10, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Counsel for Plaintiff D. Keith Heflin and**
**Third-Party Defendant Worlds of Games, LLC**

John B. Mumford, Jr. (VSB No. 38764)
Kathryn E. Kransdorf (VSB No. 74124)
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia  23060
804-967-9604 (Telephone)
804-967-2411 (Fax)
jmumford@hdjn.com
kkransdorf@hdjn.com

R. Parrish Freeman, Jr. (BPR 027955)
WADDEY & PATTERSON, P.C.
Suite 500 Roundabout Plaza
1600 Division Street
Nashville, Tennessee  37203
615-242-2400 (Telephone)
rpf@iplawgroup.com


_____ /s/ _____
Counsel for Defendants Gary B. Coleman, Jr. and
Coleman Music and Entertainment, L.L.C. and
Supreme Petroleum, Inc.

J. Gray Lawrence, Jr. (VSB No. 13401)
Faggert & Frieden, P.C.
222 Central Park Avenue, Suite 1300
Virginia Beach, Virginia  23462
757-424-3232 (Telephone) - 757-424-0102 (Fax)
jglawrence@fflaw.com

Dale Lischer (GA Bar No. 45027)
Elizabeth G. Borland (GA Bar No. 460313)
Smith, Gambrell & Russell, LLP
Promenade II, Suite 3100
1230 Peachtree Street, NE
Atlanta, GA  30309-3592
404-815-3500 (Telephone) - 404-815-3509 (Fax)
DLISCHER@sgrlaw.com
EBORLAND@sgrlaw.com