

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

D. KEITH HEFLIN,
    Plaintiff,

v.                                        Civil Action No2:10cv566

COLEMAN MUSIC AND
ENTERTAINMENT, L.L.C.,
    Defendants.

## OPINION AND ORDER

This case involves an action for patent infringement relating to Plaintiff D. Keith Heflin's ("Plaintiff") patent for a "collector card" dispensing system with a promotional free game feature. The patent is entitled "Collector Card/Phone Card Dispensing System With Promotional Free Spin/Free Draw Game Feature" and was issued on April 10, 2001, as United States Patent No. 6,213,874 B1 ("the '874 Patent").[1] Plaintiff alleges that Defendants Gary B. Coleman and Coleman Music and Entertainment, L.L.C., (collectively, "Defendants") "ha[ve] been making, or have made, products that infringe at least one claim of the '874 Patent" and that Defendants will continue to infringe on its patent unless this Court grants injunctive relief. (Pl.'s Second Am. Compl. 3.)

Presently before the Court is the claim construction of the term "collector card" found in the '874 patent.

### I. FACTUAL AND PROCEDURAL HISTORY

On September 9, 1997, Plaintiff filed Application Serial No. 08/925,860 for a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature." The Abstract of the Application described the invention as follows:

---

[1] In its Second Amended Complaint, Plaintiff incorrectly states that the patent was issued on August 10, 2001. (Pl.'s Second Am. Compl. 3.) The patent issued by the United States Patent Office lists April 10, 2001, as the date on which the '874 Patent was issued.

> A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sales of the collector's cards, the system includes a game sub-system that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. (Def.'s Opening Claim Constr. Brief 2.)

On September 20, 1999, the Patent and Trademark Office ("PTO") rejected all claims in the Application on the grounds that they were "obvious" over U.S. Patent No. 5,674, 128 to Holch ("Holch Patent") and U.S. Patent No. 5,868,236 to Rademacher ("Rademacher Patent"). (Id. at 3.) Specifically, the Examiner found that "[i]t would be obvious to combine the inventions of Holch and Rademacher in order to have a game card vending station that produced collector cards with a monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game." (Id. at 6 (citing Prosecution History, at CM-01489-90).

In the invention covered by the Holch Patent, a player establishes an account at a customer service station and receives a magnetic I.D. card, for which he may select a PIN to use to access his account. The player deposits money into his account and can then swipe his card at a game terminal to play the desired game. Based on the results of the game, the player's account is credited and debited on his magnetic I.D. card. The player can obtain his or her winnings by presenting the card to the cashier. (Id. at 4 (citing Holch Patent, 5:43-8:6)). The Rademacher Patent covers a "station" consisting of a payment acceptor and a card dispenser for dispensing prepaid long distance telephone cards to the customer. Once the customer deposits his payment into the acceptor and selects the desired amount of long distance service, the station dispenses a telephone card and a separate slip with an activated PIN and the selected amount of long distance service printed on it. (Id. at 4 (citing Rademacher Patent, 2:33-64).

On June 24, 2000, Plaintiff submitted to the Examiner a statement consisting of four arguments as to why his Patent Application should be granted in spite of the Holch and Rademacher Patents. The first and second arguments distinguished Plaintiff's invention from the Holch Patent on the grounds that the machines in Holch did not accept currency and, in Holch, the player places money on an account balance associated with the card. Plaintiff's third argument attempted to distinguish Plaintiff's invention from Rademacher on the grounds that the system disclosed in Rademacher did not dispense collector cards. Specifically, Plaintiff stated:

> In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value card. This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention. In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention. (Id. at 6 (citing Prosecution History, at CM-01498) (emphasis added).)

Plaintiff's final argument was that neither Holch nor Rademacher "suggests the combination of a card dispenser with a gaming device for collector cards." (Id. at 6 (citing Prosecution History, at CM-01498).) To this end, Plaintiff stated, "This directly teaches away from the value of the collectable cards of the present invention where the user is paying money for the value of the card being dispensed from the machine." (Id. at 6-7.) Based on Plaintiff's arguments, the Examiner issued a notice of allowance of all claims in the Application, stating "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." (Id. at 7.)

Wherefore, on April 10, 2001, the PTO issued U.S. Patent No. 6, 213, 874 B1 ("the '874 Patent), which is the subject of the instant dispute. The '874 Patent contains nine patent claims

that protect systems and methods for dispensing a collector card/phone card with promotion free spin/free game feature. (Pl.'s Init. Br. On Claim Constr. 1.)

On November 18, 2010, Plaintiff filed suit against Coleman Music and Entertainment, Inc., and Gary B. Coleman Jr., alleging infringement of the '874 patent." On December 12, 2010, Plaintiff filed a First Amended Complaint adding Supreme Petroleum, Inc., as a defendant. Plaintiff filed a Second Amended Complaint on January 19, 2011 adding Defendant Slip-In Food Marts, Inc., as a defendant. Plaintiff's Second Amended Complaint alleges a single count of patent infringement and asserts, among other things, that defendant Coleman Music, at the direction of defendant Coleman, sold and/or licensed one or more infringing devices to both Defendants Supreme Petroleum and Slip-In Food Marts which were placed for public use at Defendants' retail locations. (2d Am. Compl. ¶¶ 7–8). On July 21, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Slip-In Food Marts, Inc., be dismissed without prejudice and that Slip-In Food Marts, Inc., be dismissed without prejudice as a party to this action. On August 3, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Supreme Petroleum, Inc., be dismissed without prejudice and that Supreme Petroleum, Inc., be dismissed without prejudice as a party to this action.

Still before the Court are Plaintiff's claims against Defendants Gary Coleman and Coleman Music and Entertainment, LLC (collectively, "Defendants"). The present issue in this litigation is the claim construction of the term "collector card" found in the '874 patent. Each of the nine patent claims in the '874 Patent includes the term "collector cards." (Pl.'s Init. Br. On Claim Constr. 1.) The parties agree that the term "collector cards" is the only term that requires construction in this case. (Id.; Def.'s Opening Claim Constr. Brief 1.)

## II. APPLICABLE LAW

Claim construction is a question of law, and thus must be decided by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371 (1996). The Federal Circuit has repeatedly stated that, in construing claims in a patent, each claim term should generally be given its "ordinary and customary meaning." See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). In other words, claims should be read as having "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the . . . effective filing date of the patent application." Id. This "starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." Id.

In assessing claim terms, a person of ordinary skill in the art "is deemed to read the claim terms in the context of the entire patent, including the specification and prosecution history." Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008). Thus, the Court must look to the totality of the circumstances to inform its interpretation of the claim terms, including "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Id. at 1373. Ordinarily, the specification is the best guide for determining the meaning of a claim term. Phillips, 415 F.3d at 1315. However, statements made by an applicant during prosecution of a patent can also influence the court's interpretation of a particular claim. Computer Docking Station, 519 F.3d at 1374 ("'[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.' A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art"); Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain

their allowance and in a different way against accused infringers"). In addition, the Federal Circuit has stated that courts may look to extrinsic evidence, such as dictionaries and treatises or expert testimony, in construing a particular claim. Phillips, 415 F.3d at 1318.

### III. ANALYSIS

The parties seem to agree that the language in the '874 Patent claims does not provide much guidance as to what constitutes a "collector card." (Def.'s Opening Claim Constr. Brief 10; Pl.'s Init. Br. On Claim Constr. 5-6.) Plaintiff relies on this failure of the claim language to define the term "collector card" to argue that the '874 Patent "does not define or apply the term in a way that excludes the articles that might look to disinterested non-collectors as a simple receipt." (Pl.'s Init. Br. On Claim Constr. 6.) Plaintiff extrapolates from this that the "primary criterion" in assessing whether something is a "collector card" is "that the article is collectible to someone – a 'collector' – which would imbue them with value to that 'collector.'" (Id.) Plaintiff thus propounds the following construction of "collector card": "a piece of paper, cardboard, plastic, or metal in a round, square, rectangular, or die cut shape, that would contain information that would make it valuable or interesting to be acquired by a collector for study, comparison, exhibition, hobby, nostalgia, or investment."[2] (Id. at 7.)

By contrast, Defendants focus on a meaning of "collector card" which conforms with the idea that to be a "collector card," the item must *be* a "collector card" when purchased. (Def.'s Opening Br. On Claim Constr. 11.) In other words, a "collector card" does not include things bought and sold for one purpose, which later happen to become a part of someone's collection at a later date. (Id.) To this end, Defendants contend that the proper definition of "collector card"

---

[2] Plaintiff derived this construction of the term from the Declaration of Michael A. Berkus, filed with this Court on February 4, 2011. Mr. Berkus is Plaintiff's Expert Witness in this case.

is "a card that has recognized value as a collectable item at the time of purchase, and excluding a card that is purchased by a customer because the card has some associated value – not as collectable – that is accessed by a PIN number that is printed on the card." (Id. at 1.)

The "totality of the prosecution history" suggests that this construction of "collector card" is more appropriate than that offered by Plaintiff. Computer Docking Station, 519 F.3d at 1373. Indeed, it seems that Plaintiff would have this Court believe that *anything* capable of being collected or dispensed from a machine is a "collector card" worthy of protection under the '874 Patent. We cannot accept such an amorphous and limitless construction of the term in issue in this case. Rather, we find that, to properly be considered a "collector card," an item must, at the time it is dispensed, have some intrinsic value to a collector of that type of item or of the kind of picture or text which appears on the face of the card. That something is capable of being collected by someone, somewhere cannot be the standard by which we measure whether or not it is a "collector card." Indeed it seems that, under the construction which Plaintiff now advocates, the player identification cards and telephone cards in the Holch and Rademacher Patents, respectively, would fall under the umbrella of "collector cards."

The specification of the '874 Patent buttresses this conclusion. First, the specification states that a primary purpose of Plaintiff's invention is to "increase interest in purchasing ["collector cards"]." '874 Patent, 1:16-19. It further states that "it is advantageous to a distributor to provide a distinguishing promotion in order to encourage adults to purchase their collector's series cards." Id. at 1:32-42. This suggests that the cards which Plaintiff describes must have some intrinsic value which makes them desirable for *purchase*, and thus that they must have recognized value as a collectable item at the time they are dispensed. In the "Background of the Invention" section of the Patent Application, Plaintiff further stated:

> Collecting special collector's series cards has become increasingly popular with the general public. Such cards are used for entertainment purposes in various ways, such as exchanging them with other collectors or saving them as a memento containing special significance to the collector. . . Most new collector's cards are purchased at retail stores and specialty shops from counter stock or display stock.
> '874 Patent 1:24-46.

That the cards which Plaintiff describes are "used for entertainment purposes" and can be purchased by the collector as part of a series quite clearly shows that "collector cards," as intended under the '874 Patent, have value at the time they are dispensed. Moreover, during the prosecution of his patent, Plaintiff repeatedly stated, in an attempt to distinguish his invention from the Holch and Rademacher Patents, that the purpose of his invention was the sale of "collector cards" and that the card being dispensed has "inherent value." (Def.'s Opening Br. On Claim Constr. 17.) As Plaintiff stated, "This use of an adhered label [in the Rademacher Patent] would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention." (Id. at 18.) When an applicant so clearly disavows the scope of his patent in distinguishing his claim from prior art, the patent must be construed to exclude that which the applicant disclaimed. See American Piledriving Equip., Inc. v. Geoquip, Inc., 675 F.Supp.2d 605, 607 (E.D. Va. 2009); Computer Docking Station, 519 F.3d 1366 (Fed. Cir. 2008); Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473 (Fed. Cir. 1998). Thus, the '874 Patent must be construed as excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a PIN number.

The Supreme Court has made clear that "a patent must describe the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" Markman, 517 U.S. at 373. Indeed, "the limits of a patent must be known for the protection of the patentee, the encouragement of the inventive

genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public." Id. at 390. To adopt Plaintiff's construction of "collector card" would create a "zone of uncertainty" as to what is and what is not protected under the '874 Patent. Indeed, according to Plaintiff's expert, it is "virtually impossible" to determine whether a particular item will become collectible. "Only the consumer and collector can decide on what they find interesting to collect." (Berkus Decl. ¶ 26.) Moreover, Plaintiff's expert admits that, by his definition, "[t]he collector card category is extremely large." (Id. at ¶ 34.) Such a limitless construction of the term simply cannot stand.

For the reasons stated herein, we find that the term "collector card" refers to a card which, at the time it is dispensed, has some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card. The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED.**

Norfolk, Virginia

_____/s/_____
Robert G. Doumar
Senior United States District Judge

October 12, 2011