IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

DEC 5 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

D. KEITH HEFLIN,

    Plaintiff,

v.                                                                                    Civil Action No2:10cv566

COLEMAN MUSIC AND
ENTERTAINMENT, L.L.C.,

    Defendants.

## OPINION AND ORDER

This case involves an action for patent infringement relating to Plaintiff D. Keith Heflin's ("Plaintiff") patent for a "collector card" dispensing system with a promotional free game feature. The patent is entitled "Collector Card/Phone Card Dispensing System With Promotional Free Spin/Free Draw Game Feature" and was issued on April 10, 2001, as United States Patent No. 6,213,874 B1 ("the '874 Patent").[1] Plaintiff alleges that Defendants Gary B. Coleman and Coleman Music and Entertainment, L.L.C., (collectively, "Defendants") "ha[ve] been making, or have made, products that infringe at least one claim of the '874 Patent" and that Defendants will continue to infringe on its patent unless this Court grants the requested relief. (Pl.'s Second Am. Compl. 3.)

Presently before the Court is Defendants' Renewed Motion for Summary Judgment, filed October 25, 2011, and Plaintiff's Motion for Summary Judgment on Defendants' Amended Counterclaims, filed November 14, 2011.

---

[1] In its Second Amended Complaint, Plaintiff incorrectly states that the patent was issued on August 10, 2001. (Pl.'s Second Am. Compl. 3.) The patent issued by the United States Patent Office lists April 10, 2001, as the date on which the '874 Patent was issued.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 9, 1997, Plaintiff filed Application Serial No. 08/925,860 for a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature." The Abstract of the Application described the invention as follows:

> A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sales of the collector's cards, the system includes a game subsystem that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. (Def.'s Opening Claim Constr. Brief 2.)

On September 20, 1999, the Patent and Trademark Office ("PTO") rejected all claims in the Application on the grounds that they were "obvious" over U.S. Patent No. 5,674, 128 to Holch ("Holch Patent") and U.S. Patent No. 5,868,236 to Rademacher ("Rademacher Patent"). (Id. at 3.) Specifically, the Examiner found that "[i]t would be obvious to combine the inventions of Holch and Rademacher in order to have a game card vending station that produced collector cards with a monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game." (Id. at 6 (citing Prosecution History, at CM-01489-90).

In the invention covered by the Holch Patent, a player establishes an account at a customer service station and receives a magnetic I.D. card, for which he may select a PIN to use to access his account. The player deposits money into his account and can then swipe his card at a game terminal to play the desired game. Based on the results of the game, the player's account is credited and debited on his magnetic I.D. card. The player can obtain his or her winnings by presenting the card to the cashier. (Id. at 4 (citing Holch Patent, 5:43-8:6)). The Rademacher Patent covers a "station" consisting of a payment acceptor and a card dispenser for dispensing

prepaid long distance telephone cards to the customer. Once the customer deposits his payment into the acceptor and selects the desired amount of long distance service, the station dispenses a telephone card and a separate slip with an activated PIN and the selected amount of long distance service printed on it. (Id. at 4 (citing Rademacher Patent, 2:33-64).

On June 24, 2000, Plaintiff submitted to the Examiner a statement consisting of four arguments as to why his Patent Application should be granted in spite of the Holch and Rademacher Patents. The first and second arguments distinguished Plaintiff's invention from the Holch Patent on the grounds that the machines in Holch did not accept currency and, in Holch, the player places money on an account balance associated with the card. Plaintiff's third argument attempted to distinguish Plaintiff's invention from Rademacher on the grounds that the system disclosed in Rademacher did not dispense collector cards. Specifically, Plaintiff stated:

> In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value card. This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention. In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention. (Id. at 6 (citing Prosecution History, at CM-01498) (emphasis added).)

Plaintiff's final argument was that neither Holch nor Rademacher "suggests the combination of a card dispenser with a gaming device for collector cards." (Id. at 6 (citing Prosecution History, at CM-01498).) To this end, Plaintiff stated, "This directly teaches away from the value of the collectable cards of the present invention where the user is paying money for the value of the card being dispensed from the machine." (Id. at 6-7.) Based on Plaintiff's arguments, the Examiner issued a notice of allowance of all claims in the Application, stating

"[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." (Id. at 7.)

Wherefore, on April 10, 2001, the PTO issued U.S. Patent No. 6, 213, 874 B1 ("the '874 Patent), which is the subject of the instant dispute. The '874 Patent contains nine patent claims that protect systems and methods for dispensing a collector card/phone card with promotion free spin/free game feature. (Pl.'s Init. Br. On Claim Constr. 1.)

On November 18, 2010, Plaintiff filed suit against Coleman Music and Entertainment, Inc., and Gary B. Coleman Jr., alleging infringement of the '874 patent." On December 12, 2010, Plaintiff filed a First Amended Complaint adding Supreme Petroleum, Inc., as a defendant. Plaintiff filed a Second Amended Complaint on January 19, 2011 adding Defendant Slip-In Food Marts, Inc., as a defendant. Plaintiff's Second Amended Complaint alleges a single count of patent infringement and asserts, among other things, that defendant Coleman Music, at the direction of defendant Coleman, sold and/or licensed one or more infringing devices to both Defendants Supreme Petroleum and Slip-In Food Marts which were placed for public use at Defendants' retail locations. (2d Am. Compl. ¶¶ 7–8). On July 21, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Slip-In Food Marts, Inc., be dismissed without prejudice and that Slip-In Food Marts, Inc., be dismissed without prejudice as a party to this action. On August 3, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Supreme Petroleum, Inc., be dismissed without prejudice and that Supreme Petroleum, Inc., be dismissed without prejudice as a party to this action.

Following a Markman hearing, this Court entered an Opinion and Order, dated October 12, 2011, in which we construed the term "collector card" to mean "a card which, at the time it is dispensed, has some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card." (Opinion and Order, at 9.) We further held that the term "collector card" must be interpreted as "excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a pin number." (Id. at 8.)

In their Motion for Summary Judgment, Defendants allege that, based on this Court's construction of the term "collector card," "*none* of the machines accused of infringement in this case can infringe [the '874 Patent] as a matter of law." (Def.'s Mem. in Supp. of Mot. Summ. J. 1-2.) Also before the Court are Defendants' two remaining Counterclaims against Plaintiff: Tortious Interference (Count I) and False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id. at 323–24.

In reviewing a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court construes all facts and inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007) (citing United States v. Diebold, Inc., 369 U.S. 564, 655 (1962); Saucier v. Katz, 533 U.S. 194, 201 (2001)). Indeed, the moving party bears the

initial burden of showing "the absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). Once the moving party satisfies this burden, the nonmoving party then must recite specific facts showing that there is a genuine dispute of fact which merits a trial. Id. (citing Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Summary judgment "will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." Honor, 383 F.3d at 185.

In patent cases, "[s]ummary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005). As this Court has held, "[c]onclusory statements regarding equivalence do not raise a genuine issue of material fact." American Piledriving Equip., Inc. v. Geoquip, Inc., 696 F. Supp.2d 582, 586-87 (E.D.Va. 2010) (citing PC Connector, 406 F.3d at 1364).

### III. ANALYSIS

#### A. *Defendants' Renewed Motion for Summary Judgment*

In his Second Amended Complaint, Plaintiff alleges a single count of Patent Infringement against Defendants. To prove patent infringement, "a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011). A plaintiff can satisfy this burden by showing that the accused device embodies every limitation in the claim either literally or by a substantial equivalent. Geoquip, 696 F. Supp.2d at 586-87. This requires the plaintiff to "compare the alleged infringing device to the properly construed claims to determine if all the

claim limitations are met." Fred Hutchinson Cancer Research Center v. BioPet Vet Lab, Inc., 768 F.Supp.2d 872, 875 (E.D.Va. 2011) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001)).

"Literal infringement occurs when every limitation recited in the claim is found in the accused device so that the claims read on the device exactly." Geoquip, 696 F.Supp.2d at 587. "If even one limitation is missing or is not met as claimed, there is no literal infringement." Elkay Mfg. Co. v. EBCO Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999). If Plaintiff cannot show literal infringement, he may still establish infringement "by showing that the accused device contains elements that are equivalent to those claim limitations that are not literally present in the device. Geoquip, 696 F. Supp.2d at 587 (citing Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999). This doctrine of equivalents is "limited," and is applied to each individual claim limitation, rather than to the invention in its entirety. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1367 (Fed. Cir. 1999).

The '874 Patent contains two independent claims. Claim 1 provides as follows:

A system for dispensing collector cards to a user comprising:
   a. a currency acceptor;

   b. a card dispensing mechanism;

   c. a processor operatively connected to the currency acceptor and to the card dispensing mechanism whereby a signal is sent to the card dispensing mechanism by the processor to dispense the collector cards in response to receipt of a pre-determined amount of currency at the currency acceptor;

   d. a display and user control panel each operatively connected to the processor, and;

   e. the processor including a promotional game subsystem, the game sub-system generating information at the display and receiving information from the user

> control panel whereby the user can play an electronic promotional game in response to and conditioned on the purchase of the collector cards.

Independent Claim 5 sets forth the claim as a method rather than a system:

> A method of dispensing collector cards from a collector card dispensing system to a collector comprising the steps of:
>
> a. accepting currency from the collector at an electromechanical currency acceptor associated with the system;
>
> b. processing in the system currency received signals from the currency acceptor;
>
> c. automatically dispensing the collector cards from a card dispensing mechanism associated with the system when the currency received signals processed reach a predetermined level;
>
> d. providing the collector an option to immediately play an electronic promotional game associated with the system as a reward for purchasing the collector cards.

In our October 12, 2011 Order, we expressly held that the '874 Patent did not cover cards that have "no intrinsic value" and "which receive their value from some external source, such as an account linked to the card by a PIN number." The Accused Telephone Machine and the Accused Internet Machine both dispense paper receipts containing information, including a PIN number that the purchaser can use to make a phone call or to connect to the Internet. Similarly, the phone cards dispensed by the FreeSpin machines contain a telephone number, PIN number, and information about the amount of telephone time purchased. Thus, as a matter of law, none of the cards dispensed by the Accused Devices is a "collector card," within the meaning of that term as construed by this Court.

Nonetheless, Plaintiff urges that Claims 1 through 4 of the '874 Patent cover not only those devices that actually dispense "collector cards," but also those which are *"capable of dispensing 'collector cards.'"* (Pl.'s Mem. in Opp. to Mot. Summ. J. 9 (emphasis in original)). In support of this argument, Plaintiff argues that Claim 1, along with Claims 2, 3, and 4, claims a "system," and that the term "collector card" is not a limitation of the claims except insofar as the system must be capable of dispensing them. Thus, according to Plaintiff, the manufacture or sale of a device "with the claimed features is an infringement [of Claims 1 through 4 of the '874 Patent] even if the machine is never used to dispense anything." (Id. at 9.)

However, the Federal Circuit has expressly disclaimed this logic. See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551 (Fed. Cir. 1995). In High Tech, the patentee claimed a patent on a hand-held endoscope for use in dental work. The claims of the patent required the endoscope to have a camera that was "rotatably coupled to said body member." The accused device was fixed to its housing with two set screws, but if the screws were loosened, the accused device could become "rotatable." The district court determined that because the device could be rotated if its screws were loosened, it was *cap*able of being rotated and therefore infringed the patented device. Id. at 1553.

On appeal, the Federal Circuit reversed, noting that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all limitations of a patent claim." Id. at 1555 (citing Hap Corp. v. Heyman Mfg. Co., 311 F.2d 839, 843 (1st Cir. 1962) ("The question is not what [a device] might have been made to do, but what it was intended to do and did so . . . that a device could have been made to do something else does not of itself establish infringement."). Here, as in High Tech, the fact that the Accused Devices might be capable of dispensing "collector cards" is "not enough, by itself, to justify a finding that the manufacture

and sale of [the Accused Devices] infringe [Plaintiff's] patent rights." High Tech, 49 F.3d at 1556. This capability must also be coupled with intent on the part of Defendants to use the Accused Devices for the purpose of distributing collector cards. Id. (noting the district court's error in failing to consider whether the defendant "intended or anticipated that dentists would remove the set screws and render the [accused device] "rotatably coupled" during normal operation, or whether any dentist had actually operated the [accused device] in that fashion.").

Here, Plaintiff has not shown that any of the Accused Devices is even capable of distributing "collector cards." Although each device has a paper printer, they do not have card dispensing mechanisms as such. Nor has Plaintiff put forth any evidence that Defendants intended to use the Accused Devices to distribute "collector cards" or that any of the Accused Devices has ever distributed anything other than paper receipts.

Moreover, if, as Plaintiff contends, the term "collector card" is not a true limitation on Claims 1 through 4, Plaintiff's patent becomes virtually indistinguishable from the Rademacher Patent. Indeed, the Rademacher Patent expressly states, "It should be understood that many items other than phone cards can be dispensed in this arrangement, for example, lottery tickets or cards; bus, train, or subway tickets; postage, etc." (Rademacher Patent, 6:30-33.) The devices covered by the Rademacher Patent thus appear capable of dispensing "collector cards." Were we to accept Plaintiff's argument, it seems we would have to find that the pre-existing Rademacher Patent, from which Plaintiff so clearly attempted to distinguish his design during the patent prosecution, infringes Plaintiff's patent.

However, as we noted in our Markman Order, during the prosecution history, Plaintiff repeatedly emphasized that what made his proposed patent unique was the fact that it distributed

"collector cards," not the fact that it was capable of distributing a "collector card." (Prosecution History, at CM-01498.) Indeed, as stated *supra*, Plaintiff argued before the Patent Examiner as follows:

> In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention.

Plaintiff cannot now disavow this argument in order to survive summary judgment. American Piledriving Equip., Inc. v. Geoquip, Inc., 675 F.Supp.2d 605, 6-7 (E.D.Va. 2009) (when an applicant clearly disclaims the scope of his patent in distinguishing his claim from prior art, the patent must be construed to exclude that which the applicant disclaimed); Computer Docking Station Corp v. Dell, Inc., 519 F.3d 1366 (Fed. Cir. 2008) (same). Moreover, in the Patent Examiner's Notice of Allowance, the Examiner stated that the reasons for allowing Plaintiff's patent were that "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." We thus find that unless the Accused Devices actually distribute "collector cards," they do not infringe the '874 Patent. To hold otherwise would allow Plaintiff's Patent to cover nearly any device capable of dispensing a card depicting text or graphics. Such a result is simply untenable.

Finally, as Plaintiff concedes, Claims 5 through 9 of the '874 Patent describe a method practiced by a "collector card" dispensing system, meaning that a "collector card" must actually be dispensed by the Accused Devices for this Court to find that such devices have infringed the '874 Patent. Because we find as a matter of law that the Accused Devices do not dispense "collector cards," Defendants' Motion for Summary Judgment is **GRANTED**.

### B. *Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims I and II*

Also before the Court is Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims One (alleging Tortious Interference) and Two (alleging False Advertising).

#### 1. Tortious Interference

Count One of Defendants' Amended Counterclaim alleges that Plaintiff Heflin and WOG tortiously interfered with (i) a contractual relationship between Coleman Music and TA Travel Centers of America ("TA") and (ii) business expectancies that Coleman Music had with Frank's Trucking Center, All American Plazas, Inc., and other potential customers. (Def.'s Am. Counterclaim at 17-18.) However, in both the Final Pretrial Order and Defendants' Brief in Reply to Plaintiff's Opposition to Defendants' Counterclaims, Defendants identify tortious interference claims against Plaintiff Heflin and WOG with respect to Defendants' alleged contractual relationships with Slip-In Food Marts, Inc. ("Slip-In"), and Supreme Petroleum, Inc. ("Supreme"). Although Defendants failed to assert their claims regarding Plaintiff's alleged tortious interference with respect to Supreme and Slip-In in their Amended Counterclaim, we will address those claims here in an attempt to dispose of this matter as efficiently as possible.

Plaintiff is a resident of Tennessee, whereas Defendants' citizenship lies in Florida. Therefore, this is a multistate tort action and Virginia's choice of law rules apply. See Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). It is well settled in Virginia that in resolving conflicts of laws, "the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." McMillan v. McMillan, 219 Va. 1127, 1128 (1979). With respect to Defendants' business relationship with TA, the alleged wrongful act was the letter sent by counsel for Plaintiff and

WOG to a TA location in Florida and the business relationship that allegedly was terminated thereafter concerned the placement of Coleman Music machines at several TA locations in Florida. Therefore, the appropriate law to apply to Defendants' tortious interference claim with respect to TA is the law of the state of Florida. With respect to Defendants' tortious interference claims regarding Slip-In, Supreme, Frank's Trucking Center, Inc., and All American Travel Plaza, Inc., the business relationships and expectancies which Defendants claim were based upon the placement of Coleman Music machines in Virginia. Therefore, Virginia law applies to Defendants' tortious interference claims regarding Slip-In, Supreme, Frank's Trucking Center, Inc., and All American Travel Plaza, Inc..

We note at the outset that the elements of tortious interference are virtually identical under the laws of Florida and Virginia. To succeed on a claim of tortious interference in either state, a claimant must show that: (i) there was a business relationship or expectancy, with a probability of future economic benefit to plaintiff, (ii) defendant had knowledge of that relationship or expectancy, (iii) there is reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued the relationship or realized the expectancy, and (iv) damage to the plaintiff. Buffalo Wings Factory, Inc. v. Mohd, 622 F.Supp.2d 325, 336 (E.D.Va. 2007) (citing Commercial Bus. Sys., Inc. v. Halifax Corp., 253 Va. 292 (1997); Salit v. Ruden, Mclosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385 (Fla. 4th DCA 1999).

As we have already noted, Defendants contend that in November and December 2010, they had valid contractual relationships with TA, Slip-In, and Supreme, and that they had reasonable business expectancies with Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers. Defendants further state that Plaintiff Heflin and World of Games

("WOG"), of whom Plaintiff is the president and majority shareholder, knew of these existing contracts and business expectancies. Defendants claim that Plaintiff Heflin and WOG made false statements that the Coleman Game Machines infringe the '874 Patent to TA, Slip-In, and Supreme, and that Plaintiff made similar statements to Frank's Trucking Center, All American Plazas, Inc., and other potential customers through telephone calls and emails with these individuals. Defendants allege that these statements were intended to induce TA, Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers to terminate their contractual relationships or to refuse to do business with Defendants. Defendants further contend that TA, Slip-In, and Supreme did terminate their contractual relationships with Defendants on the basis of statements made by Plaintiff, and that Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers refused to do business with Defendants thereupon.

Defendants have shown that their contract with TA was set forth a specified term of June 1, 2008, through November 30, 2011. Defendants have also shown that Plaintiff knew that Defendants were doing business with TA in November 2010. Moreover, because Defendants' contract with TA lists an expiration date of November 30, 2011, Defendants have shown that, absent some interference, Defendants would likely have continued their business relationship with TA until that date. Finally, as Defendants have shown that TA canceled its contract with Defendants in January 2010, Defendants have shown that they suffered damages as a result of Plaintiff's interference.

However, Defendants have failed to show any evidence of intentional misconduct by Plaintiff or WOG. Proof of intentional misconduct must meet an objective test. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 228 (4th Cir. 2004). In this case,

Plaintiff and WOG apparently held a good faith belief that Defendants were infringing Plaintiff's Patent. It was on that belief that Plaintiff and WOG issued notice to TA of the potential infringement by the Coleman Machines as a means of attempting to protect Plaintiff's patent. See Appleton v. Bondurant & Appleton, P.C., 60 Va. Cir. 208, at *19 (2005) (finding no intentional misconduct and thus no tortious interference where defendant believed he was entitled by law to take certain action which resulted in termination of plaintiff's contract). Defendants have thus failed to show that any interference by Plaintiff with Defendants' contractual relationship with TA was the result of intentional misconduct, as is required to make out a claim of tortious interference. Buffalo Wings Factory, 622 F. Supp. 2d at 336. Therefore, Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim is hereby **GRANTED** as to Count One with respect to Defendants' contract with TA.

Defendant admits that its contractual relationships with Slip-In and Supreme were at-will in nature. To prevail on a tortious interference claim involving an at-will contract under Virginia law, a claimant must prove, in addition to the factors enumerated in Buffalo Wings Factory, that Plaintiff interfered through the use of improper methods. See Duggin v. Adams, 234 Va. 221, 226-27 (1987) (where a contract is terminable at will, a plaintiff alleging intentional interference with contract must also prove that the defendant interfered with the contract by employing improper methods). "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." Duggin, 234 Va. at 227. This may include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." Id. at 228. Sharp dealing, overreaching, and unfair competition may also

constitute improper methods. Id. A plaintiff claiming intentional interference with a contract need not allege and prove all elements of liability for the independent tort which underlies his claim as to use of an improper method. Top Svc. Body Shop v. Allstate Ins. Co., 283 Or. 201, 210 n. 11 (1978).

Defendants claim that Plaintiff's filing of the lawsuit was done in bad faith, and that this constitutes an "improper method." We disagree. A patentee is authorized by law to notify potential infringers that they may be infringing a patent unless the patentee knows that such infringement claims are false and objectively baseless. See G.P. Industries, Inc. v. Eran Industries, Inc., 500 F.3d 1369 (Fed. Cir. 2007). Although we have ultimately found that Plaintiff's infringement claims were meritless, we cannot say that, at the time he filed the suit, Plaintiff knew that his claims were false, or that to file such claims was an outrageous act.

Moreover, we find that the filing of a lawsuit to enforce a patent does not constitute an "improper method" unless there is bad faith and an improper purpose in bringing the suit. See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1558 (Fed. Cir. 1995). "A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." Id. Although Defendants assert that Plaintiff acted with an improper purpose in alerting Slip-In and Supreme of potential patent infringement, Defendants allege no facts which show that Plaintiff's primary purpose in contacting Slip-In and Supreme was to harass Defendants, rather than to win a favorable judgment. Thus, even assuming that Plaintiff interfered with valid, existing contracts between Defendants and Slip-In and Supreme, Defendants have failed to plead sufficient facts showing that Plaintiff did so using improper

methods. Therefore, as to Slip-In and Supreme, Plaintiff's Motion for Summary Judgment on Defendants' Amended Counterclaim Count One is hereby **GRANTED**.

With respect to Defendants' claim that Plaintiff interfered with their future business expectancies, we find that Defendants have failed to prove that they had any business expectancy which they were reasonably certain to realize. Defendants state that in November 2010, Defendants met with Frank's Trucking Center, Inc. and All American Plazas, Inc. "to attempt to persuade them to sign lease agreements with Coleman Music to install and service Coleman Game Machines in such spaces." (Id. at 15.) Defendants contend that Plaintiff sent letters and/or emails and made telephone calls to Franks Trucking Center, Inc., All American Travel Plaza, Inc., and other potential customers stating that the Coleman Game Machines infringe the '874 Patent, and that this is why those potential customers decided not to do business with Coleman Music. However, Defendants provide no facts to support their contention that, but for Plaintiff's actions, these expectancies would have been realized.

Indeed, the mere possibility of a future business relationship is not enough to demonstrate a "business relationship or expectancy, with a probability of future economic benefit to plaintiff," as is required to make out a claim of tortious interference under Virginia law. See Commercial Bus. Sys., 484 S.E.2d at 897; Buffalo Wings Factory, 622 F.Supp.2d at 336. Rather, a claimant must establish that he or she was more likely than not to realize the business expectancy. In their Counterclaim, Defendants state only that they were attempting to persuade certain individuals and businesses to enter into business with Defendants. They plead no facts which show that these individuals or businesses were inclined to contract with Defendants, or even that they expressed any interest in doing so. Defendants have thus failed to plead a probability of future economic benefit. See Southprint, Inc. v. H3, Inc., 208 Fed. Appx. 249, 253

(4th Cir. 2006) (rejecting a vendor's tortious interference claim where the vendor had no reason to believe it had won a contract with the potential client, and thus had no objectively reasonable ground to expect imminent business with that client); American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 227 (4th Cir. 2004) (mere proof of a plaintiff's belief and hope that a business relationship will develop or continue is inadequate). Therefore, with respect to Defendants' Tortious Interference Claims regarding its future business expectancies, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**.

2. False Advertising

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B); PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011). Liability arises under the Lanham Act only where the contested statement or representation is "either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." PBM Products, 639 F.3d at 120 (citing C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997). Where the statement is literally false, a violation of the Lanham Act may be shown without proof of consumer deception. PMB Products, 639 F.3d at 120. However, where a plaintiff's theory is based on a claim of implied falsehood, a plaintiff must demonstrate, through extrinsic evidence, that the challenged statements have actually deceived consumers. Id. (citing Abbott Labs v. Mead Johnson & Co., 971 F.2d 6, 14 (7th Cir. 1992)).

Defendants Lanham Act claim rests on a claim that Plaintiff made statements which were literally false; i.e. that Defendants' machines infringed the '874 Patent. (Def.'s Am. Countercl. 19.) However, the statements made by Plaintiff Heflin and WOG to TA and other current and potential customers were simply that Plaintiff was investigating a claim of potential infringement by the Coleman Game Machines. Moreover, Defendants have supplied no evidence that Plaintiff Heflin's or WOG's statements were intended to mislead or confuse consumers. PBM Products, 639 F.3d at 120. Thus, Plaintiff's Motion for Summary Judgment on Count II of Defendant's Amended Counterclaim is **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Summary Judgment on Count One of Defendants' Counterclaim is **GRANTED**; and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim Count Two is **GRANTED**. The Clerk is **DIRECTED** to transmit a copy of this Order to all Counsel of Record.

It is so **ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

Norfolk, Virginia
December 5, 2011